IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARK CITRIGLIA<br>3575 Center Road<br>Perry, OH  44081<br><br>        Plaintiff,<br><br>  vs.<br><br>GEAUGA COUNTY HEALTH DISTRICT<br>470 Center Street, Building 8<br>Chardon, OH  44024<br><br>RICHARD PIRAINO<br>President of Geauga County Board of Health<br>470 Center Street, Building 8<br>Chardon, OH  44024<br><br>DAVID GRAGG<br>Geauga County Board of Health<br>Geauga County Health District<br>470 Center Street, Building 8<br>Chardon, OH  44024<br><br>LYNN ROMAN<br>Geauga County Board of Health<br>Geauga County Health District<br>470 Center Street, Building 8<br>Chardon, OH  44024<br><br>ASHLEY JONES<br>Geauga County Board of Health<br>Geauga County Health District<br>470 Center Street, Building 8<br>Chardon, OH  44024<br><br>PATRICIA LEVAN<br>Geauga County Board of Health<br>Geauga County Health District<br>470 Center Street, Building 8<br>Chardon, OH  44024 | Case No. _____<br><br>Judge _____<br><br>Magistrate Judge _____ |

DR. JEFFREY CAMERON
Geauga County Board of Health
Geauga County Health District
470 Center Street, Building 8
Chardon, OH 44024

CAROLYN BRAKEY
Geauga County Board of Health
Geauga County Health District
470 Center Street, Building 8
Chardon, OH 44024

PATRICK KASSON, ESQ.
c/o Reminger & Reminger
200 Civic Center Drive
Suite 800
Columbus, OH 43215

  and

ADAM LITKE
Administrative Director
Geauga County Board of Health
Geauga County Health Department
470 Center Street, Building 8
Chardon, OH 44024

   Defendants.

---

## COMPLAINT WITH JURY DEMAND

### NATURE OF ACTION

1.  This is a civil-rights action brought under federal and state anti-discrimination laws including Title VII, Ohio Rev. Code § 4112, *et seq*., the Equal Pay Act; 42 U.S.C. § 1983 (First and Fourteenth Amendments); and other Ohio statutory law.

2.  After, and at least in part because, Plaintiff, Mark Citriglia, former Program Manager for Operations & Maintenance for the Geauga County Health District, opposed and reported unethical and discriminatory practices he had discovered, Administrator Adam Litke

(aided by, and working in concert with, the Health District's Board, its outside counsel, and then-Health Commissioner Dr. Jeffrey Cameron), spearheaded a vindictive and retaliatory conspiracy to drive Plaintiff out of his position, creating such intolerable conditions that he had no choice but to resign. The unlawful practices Plaintiff opposed were matters of public concern, which included Mr. Litke's potential ethical violations for self-dealing on District contracts; his failure to comply with the agency's own personnel policies; conflict of interest issues; and the retaliation Plaintiff suffered for bringing this wrongdoing to light.

### PARTIES

3. Plaintiff resides in Geauga County, Ohio.

4. The Geauga County Health District's Board president, Richard Piraino, along with Defendants Cameron, Gragg, Roman, Jones, Brakey, and Levan, were, at all relevant times, members of the Geauga County Board of Health ("Board") and acted under color of state law. As Board members, these Defendants make ultimate determinations regarding employment actions such as hiring, firing, and discipline such as suspension, demotion, and reduction in pay. They thus have supervisory authority over employees and had such authority over Plaintiff. They are sued in their personal and official capacities.

5. Defendant Geauga County Health District ("Health District" or "District") -- a health district organized under Ohio Rev. Code § 3709.01 -- formerly employed Plaintiff, currently employs Mr. Litke, and is vicariously liable for acts and omissions taken under its customs, policies, or practices. The District is also responsible for training and supervising its employees on how to carry out their duties in a lawful manner.

6. Defendant Kasson is an attorney at Reminger & Reminger, focusing on labor and employment law, including counseling his clients on discrimination law. At all relevant times, he

worked on behalf, and in the interest, of the Health District and acted under color of state law.  His office is in Cuyahoga County, Ohio.  He is sued in his personal capacity.

7.     Defendant Litke was, at all relevant times, the Administrator of the District under contract through the Lake County General Health District ("LCGHD"), and acted in the capacity of Human Resources manager for the Geauga County Health District, as well as its Financial Manager, its Administrator, and sometimes even its Commissioner.  At all times relevant hereto, he worked on behalf, and in the interest, of the Health District, and acted under color of state law. He is sued in his personal and official capacities.

## Jurisdiction and Venue

8.     Under 28 U.S.C. §§ 1331, 1343, and 2201, Plaintiff asserts jurisdiction over federal claims under 42 U.S.C. 2000e *et seq.* and 42 U.S.C. § 1983, which provide for attorney and expert fees.  This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.

9.     This Court has personal jurisdiction over Defendants, who reside and conduct business in this District. Venue is proper under 28 U.S.C. § 1391, because the events giving rise to Plaintiff's claims took place in this District.

10.    The District, which lured Plaintiff away from his job with the Northeast Ohio Regional Sewer District where he had been successfully employed for 27 years, offered Plaintiff the position of Sanitarian-in-Training by letter dated October 9, 2019, which Plaintiff accepted, and he began his employment with the District on October 21, 2019.

11.    On or about April, 2020, Plaintiff was assigned to work in the District's household sewage program, with responsibilities that included inspecting household sewage treatment systems under the Household Sewage program; reviewing new septic system designs, inspecting construction of septic systems for compliance with Ohio's codes/statutes; performing inspections

on semi-public septic systems; and investigating nuisance complaints and illicit stormwater discharges.

13.     In May 2020, Plaintiff began working on HDIS software and assisting EH Director David Sage in gathering information on an Operations & Maintenance ("O&M") program, and he attended a training at the Lake County Health District on their program, HDIS software, and O&M.

14.     In the Fall of 2020 and into January 2021, Plaintiff investigated software applications for an O&M program; scheduled demonstrations for Geauga and Lake County Health Districts; compiled data on the county's septic system; and took preliminary steps to start an O&M program for the District.

15.     In February 2021, Plaintiff was promoted to Program Manager for O&M for the District, and given a tight deadline to create a plan and timeline to implement an O&M program, which he created by mid-March 2021.

16.     In his role as Program Manager for the District's O&M program, Plaintiff was responsible for aspects of the program that were mandated by the Ohio Department of Health, including program design; determining program fees; creating a program budget and timeline for implementation; preparing information on the program to be disseminated to the public; recommending the purchase of supplies; identifying a new software program; working on configuration of the software program; hiring staff; and training staff for the program.

17.     Plaintiff's ordinary duties did not include reporting to the Board on the Board's and Adam Litke's potential ethical violations or failure to adhere to policy, or retaliation for opposing unlawful and unethical conduct on the part of Litke and others who worked for the District.

18.     Due to issues with installers and the lack of tools available to thoroughly evaluate some of the new septic systems like Spray Irrigation, Plaintiff developed a calculation check sheet to verify designs, which caused septic system designer Frank Klarich to become irate.

19.     In March of 2021, Plaintiff presented the initial program to the Board and the District's Advisory Committee, which garnered the support of Adam Litke and the then-Health Commissioner Thomas Quade.

20.     In April 2021, Plaintiff passed the Ohio exam to become a Registered Environmental Health Specialist, and only needed to complete 2 years of work, which would have been completed on October 21, 2021.

21.     In May 2021, Ashely Jones, the daughter of septic system installer Frank Klarich and the husband of septic system designer Trevor Jones, was appointed to the Board. Ashley, who is quite influential, immediately starting questioning the O&M program, and started to sway the Board's opinion regarding implementing the program.

22.     Also around that time, the District's then-Commissioner, Tom Quade, started receiving a lot of emails from Ashely Jones inquiring about the O&M program. All Board members were copied on the emails, and all emails were answered.

23.     In or around May/June 2021, Plaintiff performed a household sewage treatment system evaluation at 11115 Sherman Road -- a property for which Board president Richard Piraino was the real-estate agent representing the buyer. The initial inspection indicated that the system was working effectively, but some of the components needed to be identified.

24.     In July of 2021, a detailed 2-hour presentation on the O&M program was given to the Board.

25.     On August 18, 2021, Defendant Piraino demanded that Plaintiff falsify an inspection report that Plaintiff had prepared so that the owner of a home on Sherman Road could

access escrow money to install a new sewage system, rather than repairing the existing sewage system.

26.     When Plaintiff refused to falsify the inspection report, Piriano verbally attacked and harassed him.

27.     In or about August 2021, Defendant Piriano invited then-Board member David Gragg, and Frank Klarich, owner of Klarich Farms LLC, to a meeting at the Sherman Road property, during which, Mr. Klarich, serving as a "consultant" to Richard Piriano, verbally attacked Plaintiff, stating that the inspection was wrong and the system should not pass inspection. Failing the system would allow the buyer to access to the seller's escrow money for a new system. Dave Sage and Tom Quade supported Plaintiff's inspection results, and the findings were not changed, resulting in Defendant Piraino exhibiting hostility toward Plaintiff in all of their subsequent interactions.

28.     Plaintiff reported the meeting incident, as well as the flak he had been receiving for refusing to falsify an inspection report, to his supervisor at the time, David Sage, who reported the matters to Linda Applebaum, Assistant General Counsel for the District, approximately October, 2021.

29.     Litke, the District, and its Board failed to address Plaintiff's concerns.  They failed to keep the Klariches at bay; they failed to stop the Klariches from demanding that their request for permits take precedence over all others; they failed to implement procedures to ensure public funds were handled properly; and they cancelled a computer program update on which Plaintiff was working that would have saved the District thousands of dollars and expedited its processes.

30.     Ethical violations, personnel policy compliance issues, conflicts of interest, and harassment for failing to falsify a report, were all operational concerns strongly affecting the

public interest and constituted matters of concern to the public. Most of the items about which Plaintiff reported had no direct effect on him.

31.     In approximately October of 2021, Plaintiff began reporting to Adam Litke and other higher management employees of the District his concerns regarding Klarich Farms' self-dealing and bullying tactics toward District employees; the District's tacit approval of Klarich Farms' bullying and self-dealing; conflicts of interest; and other ethical and legal problems he perceived were occurring within the District.

32.     On October 15, 2021, Plaintiff reported Litke's, the District's, and the Board's unlawful and unethical activities to the Ohio Ethics Committee.

33.     On February 18, 2022, Plaintiff reported Litke's, the District's, and the Board's unlawful and unethical activities to the County Prosecutor's Office.

34.     On February 29, 2022, the District formally reprimanded Plaintiff for alleged discourteous treatment toward members of the public (Klarich Farm team members).

35.     Commencing on or about March 1, 2022, the District began retaliating against Plaintiff for engaging in the protected activities described above, including but not limited to allowing Klarich Farms personnel and Frank Klarich to harass Plaintiff and his staff when Klarich's applications were not moved to the top of the list of applications to review/consider; falsely accusing Plaintiff of taking business away from Klarich Farms; sending emails to Plaintiff's supervisor discrediting Plaintiff's decisions with respect to the O&M program and various properties in the county (although Plaintiff's then-supervisor, David Sage, defended Plaintiff's actions); allowing Klarich to harass and direct Plaintiff, including demanding that Plaintiff and Mr. Sage cease working on the new software program update because it was "taking up too much time" (which ultimately resulted in Sanitarian Worker Zach Meyers' resignation); allowing Mr. Piraino to publicly criticize Plaintiff; threatening to terminate Plaintiff's employment

with comments such as, "A Program Manager is not needed; a clerk can do the work.";
interrogating Plaintiff in the presence of his then-supervisor -- the Interim Health Commissioner --
regarding Plaintiff's qualifications for the job, which he had held for a year by that time, and for
which he had received two satisfactory performance evaluations; reprimanding Plaintiff for a
change he made to a training event (i.e., closing it to installers due to employee/team member
safety concerns) after Adam Litke had approved and expressed his support for the change;
suspending Plaintiff from his job based on utterly false, unjustified, and bad faith allegations –
without even asking Plaintiff for his side of the story; prohibiting Plaintiff from entering the
premises while on suspension; ignoring Plaintiff; and excluding Plaintiff from all
communications.

37.     On March 12, 2022, Plaintiff filed a Charge of Discrimination with the EEOC,
asserting claims for retaliation, whistleblowing, and age discrimination.

38.     On March 17 and May 20, 2021, Plaintiff filed a Charge with the EEOC, stating
claims for retaliation, whistleblowing and age discrimination.

39.     On November 8, 2021, Plaintiff filed a complaint with the Ohio Department of
Commerce regarding the Board's and the District's unlawful and unethical activities.

40.     On May 2, 2022, Plaintiff filed a Charge of Discrimination with the OCRC for
retaliation and whistleblowing.

41.     On or about June 29, 2022, Plaintiff interviewed for an open Registered
Environmental Health Specialist ("REHS") position -- a position that reported to both the Lake
County Health District ("LCHD") and the Geauga Health District.

42.     The REHS job posting required applicants to have a Bachelor's degree in
environmental health or a related field that would enable qualifications as a REHS/REHST.

43.     At the time of Plaintiff's interview, he had three years of experience as an REHS, 6 months of experience performing food inspections, and had passed his REHS exam in his first year of employment with the District.

44.     At the time the interviews were conducted for the REHS position, Plaintiff was the only candidate who was REHS-certified, and who had experience conducting food surveys.

45.     Two of the candidates for the REHS position had a Master's degree in public health, and one had a BA in environmental science and became an REHSIT on July 6, 2022 – AFTER the interview.

46.     After Plaintiff answered his interview questions fluidly and with obvious knowledge of what the position would entail, and after he had proved that he would need minimal, if any, training for the position, both of Plaintiff's interviewers, Cady Stromp and Burt Mechenbier, told Plaintiff that their interview guide was *not* geared toward older, more experienced candidates like he was.

47.     Plaintiff believed, based on his interview with Stromp and Mechenbier, that he was going to be offered the REHS position.

48.     On July 14, 2022, two weeks after Plaintiff's interview, undersigned counsel sent Defendants, including Adam Litke, a letter of representation describing and opposing the District's unlawful treatment of Plaintiff.

49.     As Director for the LCHD, Adam Litke, who has access to the Bamboo HR system at LCGHD and a direct line to the interview team, was involved in the selection process for the REHS position.  In fact, when Plaintiff asked the interviewers a question regarding vacation accrual for the REHS position, they responded that Plaintiff had to address such questions with Litke.

50.     On August 21, 2022, Plaintiff filed a Charge of Discrimination with the OCRC, asserting claims for age discrimination, retaliation, and whistleblowing.

51.     A few days after filing his August 2022 OCRC Charge, LCHD interviewer Mechenbier called Plaintiff and told him that he had been ranked 4th out of the 5 candidates who applied for the REHS position.

52.     Defendants ultimately rejected Plaintiff for the position in favor of two (2) significantly younger employees with inferior qualifications, both of whom had a Bachelor's degree but did not receive their REHSIT certification until *after they interviewed.*

53.     The lack of REHSIT certification at the time of the successful candidates' interviews should have had a negative impact on the scores of their interview matrix. Instead, Litke and LCHD waited to complete the matrix until *after* the candidates obtained their REHSIT certification.

54.     On September 27, 2022, Plaintiff met with Dan Lark and Adam Litke regarding performing inspections for one of the installers who was under contract with the District, whose daughter, Ashley Jones, is a member of the Board and friends with the Board president. During this meeting, Plaintiff was told that he was no longer allowed to conduct inspections for this contractor, after which, Plaintiff gave all his open inspections to Dan Lark, who assigned them to Ashley Winters.

55.     On September 30, 2022, Plaintiff sent an email to Dan Lark, Adam Litke, and Linda Applebaum summarizing the September 27, 2022 meeting.

56.     On October 6, 2022, Plaintiff received a call from a Geauga County homeowner regarding quotes he had received for his septic system, who expressed concern about possible fraud. Specifically, the homeowner stated that he had been told by his realtor, Dan Oriely – who is friends with the owners and employees of Klarich Farms -- that he needed to obtain 3 quotes

from installers who work for or with Klarich Farms to replace his septic system, and that he believed this requirement was a way for Klarich Farms to keep prices high and ensure that it got all the septic system replacement work in the county. This is one of the reasons the task of performing septic inspections were given to the District – because it is supposed to be impartial

57. On November 21, 2022, a special Board of Health meeting was held to discuss "personnel issues and pending litigation". As Plaintiff was leaving work that day, he witnessed all of the Board's members, as well as Adam Litke and Brian Kostura but not the Health Commissioner, go into executive session. It appears Adam Litke attended in the Commissioner's stead, although neither the District's policies and procedures, nor state or federal statutes, give the District's *Administrator* the ability to act as the Health Commissioner.

58. The motion to enter executive session did not formally invite Brain Kostura and Adam Litke to attend. Since Messrs. Litke and Kostura attended the executive session without an invitation, the executive session was illegal, and the matters discussed therein are not confidential.

59. The agenda for the meeting, and the reason for the executive session, was stated as: "To discuss matters of personnel and potential litigation", which is nebulous and unclear, and did not identify one of the items outlined in G1. In addition, the executive session did not include item G3 to discuss matters with counsel, although legal counsel, Patrick Kasson, Esq., was present in the executive session. The meeting agenda also failed to state that there would be action items after the executive session. Prior to the November 21, 2022 meeting, the Board made it known if/when action items would be discussed after executive session. It is unclear whether the Board reconvened the meeting and voted, or if they voted in executive session.

60. Ohio Revised Code (R.C.) 121.22 states that closed door/executive sessions are initiated when a member makes a motion for a closed door session and the public body votes on it,

and such sessions may be attended only by members of the public body and the persons they invite.

61.     R.C. 121.22(G)(1) states:

> To consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official, or the investigation of charges or complaints against a public employee, official, licensee, or regulated individual, unless the public employee, official, licensee, or regulated individual requests a public hearing. If a public body holds an executive session pursuant to division (G)(1) of this section, the motion and vote to hold that executive session shall state which one or more of the approved purposes listed in division (G)(1) of this section are the purposes for which the executive session is to be held, but need not include the name of any person to be considered at the meeting.

62.     R.C. 121.22(G)(3) states:

> Conferences with an attorney for the public body concerning disputes involving the public body that are the subject of pending or imminent court action.

63.     On November 22, 2022, when Plaintiff tried to check his Outlook calendar to prepare for the day, he received a message stating that his account was locked.  He nonetheless proceeded to work, and upon arriving, learned that his key card had been deactivated.  He therefore followed another employee into the building, and upon entering, told employee Joel Weis that his key card had been deactivated, and asked her to let Dan Lark or Adam Litke know that he was in the lobby.  Dan Lark met Plaintiff in the lobby with documents stating that the District had voted to place him on administrative leave pending an investigation, and that he was to have no communication with Geauga Public Health employees.

64.     Plaintiff was given no indication of what he had done wrong, how long he would be on leave, who was performing the investigation, or how long the investigation would last. Administrator Litke walked past Plaintiff and Dan Lark in the lobby and saw what was transpiring but offered no information.  Mr. Lark told Plaintiff he had no knowledge as to why Plaintiff was being placed on leave and had simply been told to take care of this when Plaintiff arrived to work.

65.     The manner in which the District suspended Plaintiff violated its own policies, procedures, and protocol.  Specifically, employees being placed on administrative leave are supposed to be informed of their suspension at the end of the day – not the beginning.  Also, they are not supposed to be locked out of the District's computer system; they are supposed to be told the reason for their suspension; and they are supposed to be given a letter and information on who to contact if they had questions.

66.     In his Charges with the OCRC and EEOC, and in his complaints to the Ethics Committee, the Department of Commerce, and the Prosecutor's Office, Plaintiff opposed the unethical and unlawful activity he had observed, as well as what he reasonably believed was unlawful retaliation; reported on the District, Board's, and Litke's adverse actions and retaliatory motive toward him; and commented on the effect of Litke's, the District's, and the Board's conduct on the District's overall operation—which included chilling his and other employees' speech.  Each communication constituted its own "whistleblower report," protected activity, and speech on a matter of public concern.

67.     It was not within Plaintiff's ordinary job duties to report on these items to the Board, the Ohio Ethics Commission, the Ohio Department of Commerce, or the Prosecutor's Office, nor was it within his ordinary job duties to file Charges with the OCRC and EEOC relating to these matters.   Plaintiff's report to the Ethics Commission, the Prosecutor's Office, and the Ohio Department of Commerce did not occur through any routine personnel process, and when he made them, he did so in his capacity as a citizen.

68.     Defendant Litke's mistreatment of Mr. Sage was part of a common plan, pattern, and scheme, motivated by Defendant Litke's retaliatory animus toward Plaintiff because Mr. Sage had supported Plaintiff.  Mr. Sage's termination left Plaintiff further isolated, and having to work directly under Defendant Litke's supervision.

69.     On December 2, 2022, Plaintiff retained legal counsel to represent him in connection with his employment-related issues.

70.     Plaintiff subsequently learned *from his counsel*, who received the information from the District's counsel, that his suspension was based on the false and malicious allegation that he had wrongfully copied and/or stole documents and information from the District.

71.     Upon information and belief, Defendant Litke and/or the Board directed, authorized, or significantly encouraged the Board to place Plaintiff on administrative leave, and disseminate, via a public Board meeting, the false allegations that Plaintiff had stolen information/documents from the District, which was subsequently described in one or more news outlets.

72.     Upon information and belief, Defendant Litke also consulted with one or more Board members regarding the proposed disciplinary action, and shared this "notice" with them. Plaintiff had previously received only positive performance reviews.

73.     The Health District disciplinary policy states that "[d]iscipline shall be progressive as outlined in this manual", which policy applied to Plaintiff as a classified employee.  However, in issuing the notice to Plaintiff, the District did not follow its progressive-discipline policy.

74.   The District's discipline policy also states that "[i]mmediate attention shall be given to policy infractions," and "[d]iscipline shall be applied uniformly and consistently throughout the agency, and any deviation from standard procedures must be well justified and documented." However, Plaintiff's "notice" of suspension did not follow these standards.

75.     Defendants lacked any legitimate interest in acting or supporting actions *against* Plaintiff for his many reports, including authorizing his retaliatory suspension.   In fact, his interest in revealing Mr. Litke's and Klarich Farms' wrongdoing, and wanting a properly functioning

organization, aligned with what should have been the Board's interest as well.[1] His reports in no way hindered the District's operations or legitimate goals or mission; in fact, his speech was intended to improve those operations and that mission.

76.     Many months of hostility had their intended effect. Defendant Litke and the Board made it unbearable for Plaintiff to continue working for the District. Although it was against his wishes to leave, the hostile, retaliatory conditions became so intolerable that Plaintiff was forced to resign; that is, he was constructively discharged. His counsel wrote as much in a letter of representation to the members of the Board attorney on July 14, 2022.

77.     Plaintiff thought he had found his dream job and expected to stay at the Health District until retirement (he had 30 years of public service at that time, with just 8 months more to go for full retirement and OPERS benefits), but Defendants' retaliation created a hostile and discriminatory work environment for Plaintiff, which resulted in working conditions so intolerable that Plaintiff was compelled to resign on February 10, 2023, as any reasonable person in that position would have done.

78.     Plaintiff received his first right-to-sue letter from the OCRC on February 9, 2023 (Ex. 1); received his 4/27/23 right to sue letter from the EEOC on May 4, 2023 (Ex. 2.); and received his second right to sue letter from the OCRC on July 27, 2023 (Ex. 3).

## COUNT ONE
### (RETALIATION UNDER CIVIL RIGHTS ACT, TITLE VII, 42 U.S.C. § 2000E-3(A), AGAINST THE DISTRICT)

79.     Plaintiff incorporates all previous allegations.

---

[1] *See Mahronic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986) ("[W]hen an employee exposes unscrupulous behavior in the workplace, his interests are co-extensive with those of his employer; both want the organization to function in a proper manner.").

80.     Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), it is an unlawful employment practice for an employer to discriminate (i.e., retaliate) against its employees because she opposed an unlawful discriminatory practice or because she made a charge or participated in any manner in an EEOC proceeding.

81.     Under 42 U.S.C. § 1981a and 42 U.S.C. § 2000e *et seq.*, whoever violates the above-described legal obligation is subject to a civil action for damages, injunctive relief, or any other appropriate relief.

82.     Plaintiff had a reasonable, good-faith belief that Defendant Litke had harassed him, that Mr. Klarich had harassed him, and that the District was complicit in, and was aiding and abetting the harassment, and he complained about this unlawful practice.

83.     Plaintiff had a reasonable, good-faith belief that Defendant Litke and others who worked for the District, including the Klariches and their staff, were engaging in self-dealing and bullying, and had conflicts of interest that were causing harm to the District.  Plaintiff had a reasonable, good faith belief that the District was complicit in, and was aiding and abetting, the harassment, and he complained about this unlawful practice.

84.     Plaintiff had a reasonable, good-faith belief that Defendant Litke and the District were retaliating against him for reporting the above-mentioned harassment, self-dealing, and conflicts of interest that were harmful to the District.

85.     Plaintiff engaged in protected activity under Title VII by opposing harassment internally and externally, and by filing a charge of discrimination with the OCRC and the EEOC regarding these activities.

86.     Plaintiff engaged in protected activity under Title VII by opposing harassment and retaliation for opposing harassment internally and externally, and by filing a charge of discrimination with the EEOC and the OCRC regarding the retaliation.

87.     The District was aware that Plaintiff engaged in protected activities.

88.     The District intentionally and maliciously discriminated against Plaintiff after she opposed an unlawful discriminatory practice, i.e., gender discrimination against a female employee by failing to compensate her equally with her male counterpart in an identical position.

89.     The District, Defendant Litke, and/or the individual Board members Cameron, Piraino, Gragg, Brakey, Roman, Jones, and Levan, retaliated against Plaintiff in numerous ways including disciplining him with a written reprimand; taking him off the O&M program development assignment; precluding him from doing any work that involved the Klariches; placing him on administrative leave; disparaging him; creating a false narrative that he had stolen information/documents from the District; disparaging him to his co-workers and the public; making it clear that he was *persona non grata;* shutting down communications with him when he was on administrative leave; ignoring him; ostracizing him; terminating David Sage due to his support of Plaintiff, which left Plaintiff reporting to Defendant Litke; terminating his access to Outlook and the entire District computer system without his knowledge -- based on utterly false and malicious allegations; lodging numerous false and baseless accusations against him; using the false and baseless allegations as a basis for unwarranted disciplinary action including suspension; stripping him of his duties before an official determination was made or implemented regarding the accusations against him – which were ultimately proven to be baseless; reporting him to the Prosecutor's Office in an effort to have him indicted; removing his access to electronic files, including email and his calendar, even before his suspension started; ignoring his complaints of harassment, self-dealing, and other wrongdoing; renewing Defendant Litke's contract despite his unethical and unlawful activities and ongoing campaign of retaliation against Plaintiff; terminating David Sage, which left Plaintiff reporting directly to Litke; and making Plaintiff's work environment so intolerable that he had no choice but to resign and accept a lower paying and less

prestigious job.

90.     The retaliation was based, at least in part, on Plaintiff having engaged in protected activity, and would dissuade a reasonable worker from opposing harassment and retaliation.

91.     The District is vicariously liable for its agents' acts toward Plaintiff.

92.     As a direct and proximate result of this unlawful conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages for which the District is liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

## COUNT TWO
### (OHIO REV. CODE § 4112.02(I) – RETALIATION AGAINST THE DISTRICT, ADAM LITKE, JEFFERY CAMERON, M.D., CAROLYN BRAKEY, RICHARD PIRAINO, DAVID GRAGG, LYNN ROMAN, ASHLEY JONES, CAROLYN BRAKEY, AND PATRICIA LEVAN)

93.     Plaintiff incorporates all previous allegations.

94.     Under Ohio Law, including Ohio Rev. Code § 4112.02(I), it is an unlawful employment practice for any person to discriminate in any manner (i.e., retaliate) against any other person because that person has opposed an unlawful discriminatory practice.

95.     Ohio Rev. Code § 4112.01(A) defines "person" to include "individuals," "legal representatives," "agent[s]," "the state and all political subdivisions," "authorities," "agencies," "boards."

96.     As detailed in the preceding claim, Plaintiff engaged in protected activity and suffered retaliation as a result.

97.     The District is vicariously liable for its agents' acts.

98.     As a direct and proximate result of this unlawful conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages for which the District, Defendant Litke, and the individual Board members are liable, including, but not limited to, pain and

suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment, because they acted outside the scope of their duties when aiding and abetting the harassment and retaliation Defendant Litke foisted upon Plaintiff.

99.    Defendant Litke's and the individual Board members' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

## COUNT THREE

### (FIRST AMENDMENT RETALIATION UNDER 42 U.S.C. § 1983 AGAINST THE DISTRICT, LITKE, JEFFERY CAMERON, M.D., RICHARD PIRAINO, DAVID GRAGG, LYNN ROMAN, ASHLEY JONES, CAROLYN BRAKEY, AND PATRICIA LEVAN)

100.    Plaintiff incorporates all previous allegations.

101.    Plaintiff was a public employee who engaged in protected activity by petitioning the Board for a redress of grievances and speaking out on matters of public concern when that speech was not part of his ordinary job duties—namely, reporting to the Board and communicating publicly regarding Defendant Litke's self-dealing, the various conflicts of interest within the District, the harassment he suffered for refusing to falsify a report he had prepared, Defendant Litke's unethical conduct, Defendant Litke's failure to address misuse of public resources, and retaliation he faced because of his opposition to these matters and other speech regarding matters of public concern.

102.    Reporting to the Board on the District's relationship with the Klariches, the Klariches bullying and harassment, and Defendant Litke's retaliation, was not part of Plaintiff's ordinary job duties.  He was speaking as a citizen in bringing these potential wrongdoings or breaches of the public trust to light.

103.    Defendant Litke's failures to address coercion regarding who homeowners hired to replace their septic systems in order to direct all such business to Klarich Farms and other similar

issues Plaintiff brought to the District's attention, and his failure to implement and apply personnel policies equally, are of particular public interest, given that the District has lost several long-term employees for these and other similar reasons, and has caused at least some homeowners to be concerned about fraud.

104.    Allegations of harassment and retaliation are also classic matters of public concern,[2] as are allegations of violations of the law,[3] such as retaliating for opposing harassment and unethical conduct within the District.

105.    Reporting to the Board on issues of bullying employees and homeowners was not part of Plaintiff's ordinary job duties.  He was speaking as a citizen in bringing these activities to light.

106.    In speaking out, Plaintiff engaged in constitutionally protected conduct or activity under the First and Fourteenth Amendments.

107.    All the Defendants knew Plaintiff had engaged in protected conduct or activity.

108.    The adverse actions taken by the individual Defendants against Plaintiff, including all the retaliatory acts described in the factual narrative and Claims described herein, would deter a person of ordinary firmness from continuing to engage in that conduct.

109.    Plaintiff's First Amendment protected speech was a substantial or motivating factor[4] in the adverse actions he suffered at the hands of Defendants.

---

[2] *See, e.g., Whitney v. City of Milan*, 677 F.3d 292, 298 (6th Cir. 2012) ("Allegations of racial discrimination by a public entity 'inherently' involve a matter of public concern.") (quoting *Miller v. City of Canton*, 319 F. App'x 411, 416 (6th Cir. 2009)).

[3] *See, e.g., Banks*, 330 F.3d at 896 ("Defendants' failure to follow state law is a 'concern to the community.'"); *Mahronic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986) ("Public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law.").

[4] *See, e.g., Laster v. City of Kalamazoo*, 746 F.3d 714, 733 (6th Cir. 2014).

110.    Defendants lack any countervailing interest that outweighs Plaintiff's interest in speaking out on the above-mentioned matters.

111.    The contours of Plaintiff's rights to petition the Board for a redress of grievances and to speak on matters of public concern as a private citizen were sufficiently clearly established at the time he exercised them to apprise any health commissioner, acting health commissioner, interim health commissioner, Board member, and/or lawyer, that retaliating against him for exercising those rights was unlawful.

112.    The individual Defendants are sufficiently empowered District officials that their acts constitute the customs, practice, and practices of the District.  Moreover, Plaintiff complained about the retaliation to the individual Board members (through his lawyer), but they took no action to end Defendant Litke's vendetta or even investigate Plaintiff's complaints, and Defendant Litke's policies became the District's policy.

113.    Defendant Litke, acted under color of state law, because, in undertaking and participating in the retaliatory actions described above—including lodging false allegations against Plaintiff in a notice of disciplinary action, leading the grueling sham investigation into the false allegations lodged against Plaintiff, and his wrongful suspension, he was a willful participant in joint activity with the Board and its agents. He acted in concert with, and/or at the direction of, and with authorization and significant encouragement from, the Board, and/or exercised powers traditionally within the exclusive prerogative of the Health District and the Board.

114.    As a direct and proximate result of this unlawful campaign of retaliation the District endorsed and adopted as its own unwritten policy, Plaintiff has suffered, and will continue to suffer, economic and non-economic damages for which the District, Defendant Litke, the individual Board members, and attorney Patrick Kasson-, are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and

conditions of employment.

115.     Defendant Litke, the individual Board members, and Mr. Kasson's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

## COUNT FOUR
### (ALTERNATIVE CLAIM)
RETALIATION BECAUSE PUBLIC SERVANT DISCHARGED HIS DUTIES
(UNDER OHIO REV. CODE §§ 2921.05 AND 2307.60) AGAINST THE DISTRICT, LITKE,
ATTORNEY KASSON, ADAM LITKE, JEFFERY CAMERON, M.D., RICHARD PIRAINO,
DAVID GRAGG, LYNN ROMAN, ASHLEY JONES, CAROLYN BRAKEY, AND PATRICIA
LEVAN)

116.     Plaintiff incorporates all previous allegations.

117.     Under Ohio Rev. Code § 2921.05, no person, purposely and by unlawful threat of harm to any person or property, shall retaliate against a public servant because the public servant discharged her duties. The provision carries a criminal penalty.

118.     Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action.

119.     To the extent the Court determines that, in reporting to the Board the harassment, retaliation, Defendant Litke's potential conflicts of interest, etc., that Plaintiff was, in fact, discharging his duties and not speaking in his capacity as a citizen, then the District, Defendant Litke, Mr. Kasson, and the individual Board members, retaliated against Plaintiff for discharging his duties.

120.     This retaliation involved both threatening and eventually imposing economic harm on Plaintiff for reporting harassment, retaliation, conflicts of interest, and other issues he discovered in the course and scope of his duties.  The retaliatory acts are set forth herein above.

121.     As a direct and proximate result of this unlawful conduct, Plaintiff has suffered. and will continue to suffer, economic and non-economic damages for which the District,

Defendant Litke, the individual Board members, and Mr. Kasson, Esq. are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

**COUNT FIVE**

**(INTIMIDATION USING A FALSE WRITING UNDER OHIO REV. CODE §§ 2921.03 AND 2307.60 AGAINST LITKE AND KASSON)**

122. Plaintiff incorporates all previous allegations.

123. Under Ohio Rev. Code § 2921.03, no person, knowingly and by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, shall attempt to influence, intimidate, or hinder a public servant in the discharge of the person's duty. The provision carries a criminal penalty.
Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action.

124. The November 21, 2023 agenda and report to the public concerning Plaintiff's alleged unlawful activity was a materially false and fraudulent writing.

125. Defendant Litke and/or Mr. Kasson prepared and/or used this materially false and fraudulent writing with malicious purpose in bad faith, or in a wanton and reckless manner, to attempt to hinder Plaintiff in carrying out his job duties by subjecting him to unwarranted discipline as a public employee.

126. Defendant Litke and Mr. Kasson also used these documents to influence the Board to approve unwarranted and retaliatory discipline against Plaintiff.

127. As a direct and proximate result of this unlawful conduct, Plaintiff has suffered. and will continue to suffer. economic and non-economic damages for which Defendants Litke and Kasson are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

128. Defendants Litke and Kasson's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

**<u>COUNT SIX</u>**
**(Interfering with Civil Rights under Ohio Rev. Code § 2921.45 and § 2307.60 against LITKE, Cameron, Piraino, Gragg, Roman, Jones, Brakey, And Levan)**

129. Plaintiff incorporates all previous allegations.

130. Under Ohio Rev. Code § 2921.45, no public servant, under color of his office, employment, or authority, shall knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right. This provision carries a criminal penalty.

Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action.

131. Defendant Litke and the individual Board members are public servants. Under color of their office, employment, or authority, each knowingly deprived Plaintiff of his constitutional and statutory rights as detailed above, including his right to be free from retaliation for opposing harassment and retaliation, and his constitutional right to freedom of speech.

132. As a direct and proximate result of this unlawful conduct, Plaintiff has suffered. and will continue to suffer. economic and non-economic damages for which Defendant Litke and the individual Board members are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

133. Defendant Litke's and the individual Board members' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

## COUNT SEVEN
### (OHIO REV. CODE §§ 4112.02(J) AND 4112.99 – AIDING AND ABETTING RETALIATION AGAINST THE DISTRICT, LITKE, CAMERON, PIRAINO, GRAGG, ROMAN, JONES, BRAKEY, AND LEVAN)

134.    Plaintiff incorporates all previous allegations.

135.    Under Ohio law, including Ohio Rev. Code § 4112.02(J), it is an unlawful employment practice for any person to aid, abet, incite, compel, or coerce the doing of any act declared an unlawful discriminatory practice under Ohio Rev. Code § 4112.02.

136.    Under Ohio law, including Ohio Rev. Code § 4112.99, whoever violates the above-described legal obligation is subject to civil action for damages, injunctive relief, or any other appropriate relief.

137.    Under Ohio law including Ohio Rev. Code § 4112.02(I), it is an unlawful employment practice to retaliate against any person because he opposed an unlawful discriminatory practice.

138.    To aid or abet in discrimination, a person need only knowingly do something he ought not to do, or omit to do something he ought to do, that "assists or tends in some way to affect the doing of the thing which the law forbids."[5]

139.    The District, Defendant Kasson, and the individual Board members, aided Defendant Litke in an unlawful discriminatory practice, i.e., retaliating against Plaintiff, as described in the factual narrative and claims described above.

140.    Defendant Litke similarly aided the others in retaliating against Plaintiff.

---

[5] *State v. Stepp,* 117 Ohio App.3d, 569, 690 N.E.2d 1342 (4th Dist.1997) (quoting *Smith v. State,* 41 Ohio App. 64, 67-68, 179 N.E. 696 (9th Dist. Dec. 9, 1931)), cited in *Luke v. City of Cleveland,* No. 1:02CV1225, 2005 U.S. Dist. LEXIS 49630 (N.D. Ohio Aug. 22, 2005); *see also Woodworth v. Time Warner Cable, Inc.,* N.D. Ohio No. 1:15-CV-1685, 2015 U.S. Dist. LEXIS 148832 (N.D. Ohio Nov. 2, 2015) (citations omitted).

141.     As a direct and proximate result of this unlawful conduct, Plaintiff has suffered, and will continue to suffer, economic and non-economic damages for which the District, Defendants Kasson and Litke, and the individual Board members are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

142.     The District's, Defendant Kasson's, Defendant Litke's, and the individual Board members' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

## **COUNT EIGHT**
### **(Intentional/Tortious Interference with Prospective Employment Against Adam Litke)**

143.     Plaintiff incorporates all previous allegations.

144.     Plaintiff interviewed for a Registered Environmental Health Specialist position with Lake County.

145.     At all relevant times, Plaintiff had knowledge of Plaintiff's application with Lake County, and of his interview with Lake County.

146.      On or about July 5, 2022, Defendant Litke interfered with Plaintiff's ability to obtain the job for which he interviewed by, *inter alia*, providing negative feedback regarding Plaintiff to his interviewers, and holding off, or instructing others to hold off, on scoring the applicants' interviews until the other applicants applied for their Registered Sanitarian in Training certificate.

147.     As a direct result of Defendant Litke's interference with Plaintiff's prospective employment with Lake County, Plaintiff did not get the job for which he applied – despite the fact that he was the most qualified out of the 5 candidates who applied for the position.

148.     Defendant Litke acted intentionally, without privilege, and with malice, to interfere

with Plaintiff's job prospect with Lake County, and caused Plaintiff to lose out on the job to less qualified candidates.

149. As a result of Defendant's intentional and improper actions, Plaintiff has suffered economic damages and non-economic damages.

150. Because Litke's actions were outside the bounds of his position with Lake County, he is not immune from suit.

151. Defendant Litke's conduct reflects an outrageous and conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause, Plaintiff to incur substantial damages, thereby rendering Defendant liable for punitive damages.

### COUNT NINE
**(Improper Conduct of a Special Meeting Against the Board)**

152. Plaintiff incorporates all previous allegations.

153. On November 2021, the Board held Special Meeting and "adjourned to Executive Session at 4:34 p.m. to discuss matters of personnel and potential litigation." (Ex. 4.)

154. Plaintiff personally saw Defendant Litke and an attorney, Mr. Kostura, go with the District's Board Members to the room in which the Executive Session was held.

155. The Board violated R.C. 121.22 by having one or both non-Board members, Defendant Litke and Mr. Kostura, attend the Executive Session without a proper invitation as part of the motion to adjourn.

156. The Board came out of Executive Session and took action, which was contrary to the rules of Special Meetings under R.C. 121.22(F), as this was not part of the purpose of the Special Meeting. (Ex. 5.)

157. Specifically, on November 21, 2022, the Board came out of Executive Session at 6:01 p.m., at which time; Defendant Brakey moved to put Plaintiff on paid administrative leave

pending investigation; and the motion was carried with a roll call vote.

158.     It was a violation of R.C. 121.22(F) to advertise the purpose of the Special Meeting as being limited to holding an Executive Session to discuss matters of personnel and potential litigation only, not to take any action.

## PRAYER FOR RELIEF

For the reasons stated above, Plaintiff respectfully requests the following relief from the Court:

A.     Declare that Defendants' acts and conduct constitute violations of federal and state law and the United States Constitution;

B.     Enter judgment in Plaintiff's favor on all claims for relief;

C.     An Order enjoining the Defendants from further violations of the Open Meetings Act under R.C. 121.22;

D.     Invalidation of the resulting official actions under R.C. 121.22(H);

E.     Declare the discussions in Executi8ve Session to not be privileged if the Open Meetings Act was found to be violated;

F.     Statutory forfeiture of $500 for the violation;

G.     Award Plaintiff full compensatory damages, economic and non-economic, including, but not limited to, damages for back pay, front pay, pain and suffering, mental anguish, emotional distress, humiliation, and inconvenience that he has suffered and is reasonably certain to suffer in the future;

H.     Award Plaintiff punitive damages as appropriate for all intentional and malicious violations of federal and state law and constitutional rights;

I.     Award pre-judgment and post-judgment interest at the highest lawful rate;

J.     Award Plaintiff his reasonable attorneys' fees (including expert fees) and all other costs of this suit;

K.     Award all other relief in law or equity to which Plaintiff is entitled and that the Court deems equitable just, or proper.

Respectfully submitted,

*/s/ Caryn M. Groedel*
Caryn M. Groedel (0060131)
*cgroedel@groedel-law.com*

Caryn Groedel & Associates Co., LPA
208 Spriggel Drive
Munroe Falls, OH  44262
1291 SW Mulberry Way
Boca Raton, FL  33486
Phone: 440-230-3808
          440-207-9557
Fax:    440-664.2478
Counsel for Plaintiff

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues within this Complaint.